UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

DUSTIN RHINE and
JAMES SISSON, a/k/a "Jes,"

Defendants.
_______________________________________/

**INDICTMENT**

The Grand Jury charges:

**INTRODUCTORY ALLEGATIONS**

At all times relevant herein:

1. The purpose of the Clean Air Act ("CAA") is, among other things, "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1); *see* 42 U.S.C. § 7470 (setting forth the Congressional declaration of purpose). In enacting the CAA, Congress found that "the increasing use of motor vehicles[] has resulted in mounting dangers to the public health and welfare." 42 U.S.C. § 7401(a)(2).

2. The CAA regulates "mobile sources," which include motor vehicle engines and off-road vehicles and engines. Mobile sources must comply with the CAA emission standards. Pursuant to 42 U.S.C. §§ 7521–7554, and the regulations promulgated thereunder, the U.S. Environmental Protection Agency ("EPA") established standards limiting the emission of air pollutants from various classes of motor vehicle engines. Heavy-duty diesel engines ("HDDEs")

are one such class and are subject to the emissions regulations found at 40 C.F.R. Part 86, Subpart A. 42 U.S.C. § 7521(a)(3).

3. To meet these emission standards, vehicle manufacturers design and install certain hardware devices as components of an emissions control system to manage and treat engine exhaust. This reduces the levels of pollutants such as nitrogen oxides, particulate matter, carbon monoxide, and non-methane hydrocarbons that are emitted into the air from tailpipe exhaust and keeps those emissions within regulatory limits. For diesel engines, such emissions control devices include diesel particulate filters ("DPF"), exhaust gas recirculation ("EGR") systems, diesel oxidation catalysts ("DOC"), and selective catalytic reduction ("SCR") systems. Together, these hardware emissions control devices make up a diesel vehicle's emissions control system and are critical to ensuring that the vehicle complies with the CAA's emissions standards.

4. Pursuant to 42 U.S.C. § 7521(m)(1), the EPA is authorized to create regulations requiring manufacturers to install on-board diagnostic ("OBD") systems on vehicles and engines to ensure that emissions control systems continue to operate properly. EPA has thus enacted regulations that require the installation of OBD systems on vehicles and engines. *See* 40 C.F.R. §§ 86.007-17, 86.010-18, and 86.1806-05. OBD systems must be "capable of monitoring all emission-related engine systems or components," including the EGR system, the DOC, the DPF, and the SCR system. 40 C.F.R. § 86.010-18(a).

5. Modern highway motor vehicles contain a network of control modules that control the powertrain system and components, which includes the emissions control system. The primary control module for powertrain and emissions is often referred to as the engine control module ("ECM") (sometimes referred to as the engine or electronic control unit "ECU"). The OBD is composed of software and sensors that monitor emissions-related engine systems

and components for malfunctions that may increase emissions. Generally speaking, vehicle manufacturers integrate the OBD system into the calibration(s) stored on the ECM (i.e., the OBD is a subsystem of the calibration(s) stored on the ECM). Collectively, all calibrations (including the OBD system), operating software, and firmware on the ECM may be referred to as "software." If an emissions-related malfunction or problem occurs, the OBD system causes a malfunction indicator light ("MIL") to be illuminated on the vehicle's dashboard to alert the driver and a diagnostic trouble code ("DTC") to be stored in the OBD's memory. These functions facilitate the detection and diagnosis of a malfunction in the emissions control system. Removal, disconnection, or malfunction of certain powertrain components, including emissions control hardware, may cause the control system to limit the top speed of some vehicles to as low as five miles per hour (an effect commonly referred to as "limp mode" or "power reduced mode"), providing an incentive for the vehicle's operator to seek repairs and to prevent damage to other components.

6. OBD systems are monitoring devices or methods required to be maintained or followed under the CAA to ensure that both the emissions-monitoring computer software and the hardware emissions control devices of heavy-duty vehicles are functioning properly. *See* 40 C.F.R. §§ 86.010-18(a) and 86.1806-5(a)(1).

7. Persons seeking to evade the CAA's pollution controls for heavy-duty diesel vehicles have developed methods of modifying or removing emissions control systems and rendering the OBDs inaccurate. These modifications may be undertaken to avoid repair and maintenance costs associated with emissions controls and to improve the horsepower, torque, fuel efficiency, or other characteristics of diesel engines. These unlawful modifications result in a dramatic increase in multiple pollutants being emitted by each vehicle.

8. One method of disabling a manufacturer-installed emissions control system is to remove the portion of the vehicle's exhaust system that contains some of the emissions control equipment, such as the DOC and SCR catalyst, and replace it with a section of hollow exhaust tubing sometimes referred to as a "straight pipe." These replacement pipes do not contain emissions control hardware.

9. Alternatively, the DPF is hollowed out by removing the operational internal contents (e.g., catalyst substrate), and then is reconnected to the exhaust pipe. This gives the appearance that the components are still intact but eliminates their effective function. The EGR can be disabled through the installation of "block plates" that cover the EGR valve and prevent the recirculation of exhaust. Additionally, certain functions of emissions control components can be electronically disabled.

10. To prevent an OBD system from detecting that the emissions controls have been modified or removed, the ECM is reprogrammed to disable at least some of the OBD monitoring functions and to modify other engine calibration parameters related to the operation of emissions controls (e.g., turning off diesel exhaust fluid ("DEF") injection, turning off DPF regenerations, and remapping other parameters to account for the removed or disabled emissions controls). If an ECM is not reprogrammed after modification or removal of emissions control equipment, a properly functioning OBD will detect the malfunction or removal of the emissions control equipment, trigger a MIL alert, store a DTC and, in certain instances, cause the vehicle to go into limp mode.

11. Tampering with or removing the software or hardware of emissions components is sometimes referred to as "deletion," that is, "deleting" the emissions control components and

monitoring devices from the vehicle. Reprogramming the ECM, including the OBD system, as part of the emissions control deletion can be referred to as "tuning" or "reflashing" the vehicle.

12. Diesel Freak LLC is a company headquartered in Gaylord, Michigan. Diesel Freak LLC conducted remote reprogramming, or tuning, of OBDs, including deletions, in the Western District of Michigan and elsewhere. Ryan Lalone owns and operates Diesel Freak LLC. Wade Lalone, DUSTIN RHINE, and JAMES SISSON, a/k/a "Jes," were employed as programmers at Diesel Freak LLC.

13. Accurate Truck Service, LLC, headquartered in Grand Rapids, Michigan, is a mechanical shop that provided services, including deletions, for heavy-duty and other vehicles, and is owned and operated by Craig Scholten, Ryan Bos, and Douglas Larsen. Accurate Truck Service, LLC's service manager is Robert Swainston and its head mechanic during the relevant time period was Randy Clelland, a/k/a "Jeb."

14. Griffin Transportation, Inc., is a company that shares a premises with, and is associated with, Accurate Truck Service, LLC, and is owned and operated by Craig Scholten and Ryan Bos. Griffin Transportation, Inc., is a shipping company that owns, leases, or operates a fleet of semi-truck tractors.

15. Scott DeKock, during the relevant time period, owned and operated a shipping company in Grand Rapids, Michigan. Glenn Hoezee was the head mechanic at the company during the relevant time period.

**<u>COUNT 1</u>**
(Conspiracy to Violate the Clean Air Act)

The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 15 of the Introductory Allegations of this Indictment.

Between approximately 2012 and at least November 2018, in Kent County, in the Western District of Michigan, Southern Division, and elsewhere, the defendants,

DUSTIN RHINE and
JAMES SISSON, a/k/a "Jes,"

knowingly and voluntarily combined, conspired, confederated, and agreed with each other and with Diesel Freak LLC, Accurate Truck Service, LLC, Griffin Transportation, Inc., Ryan Lalone, Wade Lalone, Douglas Larsen, Craig Scholten, Ryan Bos, Robert Swainston, Randy Clelland, a/k/a "Jeb," Scott DeKock, and Glenn Hoezee, and with other persons known and unknown to the Grand Jury, to knowingly falsify, tamper with, and render inaccurate monitoring devices and methods required to be maintained and followed under Title 42, United States Code, Chapter 85, in violation of Title 42, United States Code, Section 7413(c)(2)(C).

<u>Objects of the Conspiracy</u>

1. An object of the conspiracy was to falsify, tamper with, render inaccurate, delete, modify, and remove software and hardware components from the emissions monitoring systems in HDDEs and vehicles, for the purposes of increasing real or perceived performance and fuel efficiency of the vehicles, and of reducing or eliminating the cost and burden associated with maintaining the vehicles.

2. Another object of the conspiracy was to generate income for one or more defendants by charging customers a fee to delete the emissions control systems in their vehicles.

3. Another object of the conspiracy was to conceal from EPA and others that the emissions control components were being removed from or modified in the vehicles.

Manner and Means

4. Company 1, headquartered in Italy, developed software used in connection with the deletion of emissions control components, and distributed that software to other members of the conspiracy. Company 1 likewise developed and distributed tools and equipment used to access the engine computer.

5. Company 2, headquartered in Ohio, is the North American distributor for Company 1. Company 2 sold and distributed Company 1's equipment, tools, and software, including for the purpose of conducting deletions of emissions control components.

6. Companies 1 and 2 designated their downstream customers, who further distributed and implemented the deletions, as "masters" and "slaves." "Masters" were programmers that used the software to reprogram the engine computer for a truck at the shop of a "slave." The "slaves" completed the hardware component of the deletion and connected the engine computer to the internet, including by using "slave tools" that allowed the computer to be connected to the internet. "Masters" were encouraged by Companies 1 and 2 to recruit "slaves." Companies 1 and 2 provided training and support to their downstream customers to help them successfully delete vehicles with HDDEs.

7. In addition to Companies 1 and 2, other companies and individuals are known to develop and distribute software and other tools and materials for use in deletions, and in fact assisted the conspirators in conducting deletions during the conspiracy.

8. Diesel Freak LLC was a "master" with dozens of "slaves" in the United States, including Accurate Truck Service, LLC. Diesel Freak LLC used Company 1's software and

tools to remotely perform the software component of deletions. From at least February 2015 to at least November 2018, Diesel Freak LLC deleted, or aided and abetted the deletion of, at least 362 vehicles.

9. Accurate Truck Service, LLC, conducted deletions by removing the hardware components of vehicles with HDDEs, and Diesel Freak LLC provided remote reprogramming services for those deletions. Diesel Freak LLC and Accurate Truck Service, LLC, used code words like “ECM wiring” on invoices to conceal the fact that the work performed was a deletion. From at least July 2016 to at least November 2018, Accurate Truck Service, LLC, deleted, or aided and abetted the deletion of, at least 83 vehicles.

10. Griffin Transportation, Inc., owned, leased, or operated vehicles with HDDEs that it caused to be deleted. Accurate Truck Service, LLC, and Diesel Freak LLC deleted those vehicles. From at least July 2016 to at least November 2018, Griffin Transportation, Inc., and its related companies, owned, leased, or operated at least 12 deleted vehicles.

11. The company formerly owned by DeKock owned, leased, or operated vehicles with HDDEs that it caused to be deleted. Accurate Truck Service, LLC, and Diesel Freak LLC assisted in those deletions. From at least August 2017 to at least November 2018, the company formerly owned by DeKock owned, leased, or operated at least 4 deleted vehicles.

Overt Acts

In furtherance of the conspiracy, the following overt acts, among others, were committed in the Western District of Michigan and elsewhere:

12. On or about September 28, 2016, RHINE deleted a 2014 truck with VIN 3HSDJSJR2EN759309 containing a Maxxforce engine.

13. On or about October 25, 2016, RHINE deleted a 2011 truck with VIN 3HSDJSJR2BN391306 containing a Maxxforce engine.

14. On or about December 14, 2016, RHINE deleted a 2012 truck with VIN 3HSDHSJR0CN451029 containing a Maxxforce engine.

15. On or about December 29, 2016, SISSON deleted a truck containing a Cummins ISX CM2350 engine with serial number 79648595.

16. On or about February 6, 2017, RHINE deleted a 2014 Ram truck containing a Cummins engine.

17. On or about February 6, 2017, RHINE deleted a 2014 truck with VIN 3HSDJSJR5CN625813 containing a Maxxforce engine.

18. On or about February 8, 2017, SISSON deleted a truck containing a Cummins ISX CM2350 engine with serial number 79664384.

19. On or about February 28, 2017, RHINE deleted a truck containing a Cummins ISX CM2250 engine with serial number 79547321.

20. On or about March 28, 2017, SISSON deleted a truck containing a Cummins ISX CM2250 engine with serial number 79616075.

21. On or about April 7, 2017, RHINE deleted a truck containing a Cummins ISX CM2350 engine with serial number 79745570.

22. On or about May 2, 2017, RHINE deleted a truck containing a Cummins ISX CM2250 engine with serial number 79445837.

23. On or about May 2, 2017, RHINE deleted a truck containing a Cummins ISX CM2250 engine with serial number 79508528.

24. On or about May 17, 2017, SISSON deleted a truck containing a Cummins ISX CM2250 engine with serial number 79582996.

25. On or about June 1, 2017, SISSON deleted a truck containing a Cummins ISX CM2350A engine with serial number 79795642.

26. On or about June 13, 2017, RHINE deleted a 2015 truck with VIN 1HTWGAZT9FH106727 containing a Maxxforce engine.

27. On or about June 22, 2017, SISSON deleted a truck containing a Cummins ISX CM2250 engine with serial number 79595980.

28. On or about July 10, 2017, RHINE deleted a 2011 truck with VIN 1FUJGLDR9BLBD0815 containing a Detroit Diesel DD15 engine.

29. On or about August 30, 2017, RHINE deleted a truck containing a Cummins ISX CM2250 engine with serial number 79582245.

30. On or about February 5, 2018, Diesel Freak LLC communicated with Company 2 by email about troubleshooting the use of four "hasp keys," which are used in operating Company 1's tools, and identified the four key holders as "ryan," "Dustin," "wade," and "Jes."

31. In or around April 2018, RHINE attended an "advanced course" in using "calibration software" and "the working logic of the engine ECU" hosted by Company 2.

32. On or about May 16, 2018, RHINE and SISSON deleted a truck containing a Cummins ISX CM2250 engine with serial number 79460045.

33. On or about June 1, 2018, RHINE deleted a 2015 Ram 1500 truck.

34. On or about June 4 to 6, 2018, Ryan Lalone and SISSON attended a "training for engine/ECU reprogramming" in Italy.

35. On or about June 26 and 27, 2018, RHINE deleted a 2016 Maxxforce N13 and communicated by email with Company 2 for assistance in the process.

36. On or about July 30, 2018, RHINE deleted a truck containing a 2015 truck with VIN 1XPCDP9X0FD270355 containing a Paccar MX13 engine.

18 U.S.C. § 371

A TRUE BILL

________________________________
GRAND JURY FOREPERSON

MARK A. TOTTEN
United States Attorney

________________________________
JUSTIN M. PRESANT
Assistant United States Attorney